# United States Court of Appeals
# for the District of Columbia Circuit

### No. 24-5168

AMERICA FIRST LEGAL FOUNDATION,

*Plaintiff-Appellant,*

*v.*

HAMPTON DELLINGER, in his official capacity,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:22-cv-03576-APM, Amit Priyavadan Mehta, U.S. Chief District Judge*

# PAGE-PROOF REPLY BRIEF FOR PLAINTIFF-APPELLANT

Reed D. Rubinstein (D.C. Bar No. 400153)
Andrew J. Block (D.C. Bar No. 90002845)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue, SE #231
Washington, D.C. 20003
(202) 964-3721
reed.rubinstein@aflegal.org
andrew.block@aflegal.org

*Counsel for Plaintiff-Appellant*

DECEMBER 13, 2024



# Table of Contents

Table of Contents ........................................................................... i

Table of Authorities ..................................................................... ii

Glossary of Abbreviations ............................................................ v

Statutes and Regulations ............................................................... 1

Summary of Argument .................................................................. 1

Argument ....................................................................................... 2

I. The Special Counsel is Not Entitled to Prosecutorial
   Discretion. ............................................................................ 2

   A. Officers of the United States Exercising Executive Power
      Must be Removable by the President. ...................................... 2

   B. The Special Counsel is Not a Prosecutor. ................................. 5

II. The Word "Shall" is a Command and Not a Suggestion. ............ 10

III. The Special Counsel's Other Arguments Fail. ........................... 12

    A. The Special Counsel Disposes of Tens of Thousands of
       Requests Per Year; It Can Look at One More. ........................ 12

    B. The Special Counsel Did Not Conduct an Investigation by
       Issuing a Letter Denying Such an Investigation. .................... 13

Conclusion ..................................................................................... 15

Certificate of Compliance

Certificate of Service

Addendum

i

# Table of Authorities

**Cases**:

*Anglers Conservation Network v. Pritzker*,
    809 F.3d 664 (D.C. Cir. 2016) ........................................................ 10

*Bowsher v. Synar*,
    478 U.S. 714 (1986) ...................................................................... 6

*Bouarfa v. Mayorkas*,
    604 U.S. \_\_\_\_ (Dec. 10, 2024) ...................................................... 11

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
    993 F.3d 880 (D.C. Cir. 2021) ............................................... 2, 3, 5

*De Martinez v. Lamagno*,
    515 U.S. 417 (1995) ............................................................. 3, 7, 8

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ................................................................. 5, 6

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ..................................................... 12

*Parsons v. United States*,
    167 U.S. 324 (1897) ...................................................................... 3

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ........................................... 1, 2, 4, 5, 6, 9

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) .................................................... 4

*Texas v. United States*,
    606 F. Supp. 3d 437 (S.D. Tex. 2022) ......................................... 6

*United States v. Armstrong,*
    517 U.S. 456 (1996).........................................................8

*United States v. Stone,*
    394 F. Supp. 3d 1 (D.D.C. 2019)......................................8

*United States v. Texas,*
    599 U.S. 670 (2023)..................................................3, 6, 7

*Whiting v. AARP,*
    637 F.3d 355 (D.C. Cir. 2011)........................................12

**U.S. Constitutional Provisions**:

Article II Sec. 1...............................................................3

**Statutes**:

Freedom of Information Act,
    5 U.S.C. § 552(a)(4)(F)(i)...........................................11

Whistleblower Protection Act,
    5 U.S.C. § 1211 ...................................................2, 3, 9
    5 U.S.C. § 1211(b) ......................................................4
    5 U.S.C. § 1216 .............................2, 5, 7, 9, 10, 14, 15
    5 U.S.C. § 1216(c)......................................................10

6 U.S.C. § 112(a)................................................................2

28 U.S.C. § 503.................................................................2

28 U.S.C. § 532.................................................................2

**Rule**:

FED. R. OF EVID. 201(b)(2)...............................................12

**Other Authorities**:

Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive Power of Removal*, 136 HARV. L. REV. 1756, 1776 (2023) .........................3

# Glossary of Abbreviations

"§ 1216" or "Section 1216" means 5 U.S.C. § 1216.

"AFL" means America First Legal Foundation.

"CSRA" means the Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111.

"FOIA" means Freedom of Information Act, 5 U.S.C. § 552 et seq.

"Hatch Act" means the Hatch Act Reform Amendments of 1993, Pub.L. No. 103-94, 107 Stat. 1001.

"OSC" means Office of Special Counsel.

"WPA" means the Whistleblower Protection Act of 1989, Pub.L. No. 101-12, 103 Stat. 16.

## Statutes and Regulations

Statutes cited in this brief are reproduced in the addendum.

## Summary of Argument

The Special Counsel demands the deference and discretion of an Article II executive branch officer while claiming the "independence" that the Supreme Court explicitly rejected in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020). Citing cases that deal with the authority of Officers, who unquestionably serve at the pleasure of the President, the Special Counsel fails to account for key differences in his role and authority. One key distinction is the Special Counsel's authorizing statute, which limits the ability of the President to remove the Special Counsel. Next, the Special Counsel conflates his role in enforcing laws the government administers as an employer with laws the government enforces as a sovereign. He does not enforce or prosecute laws that apply to the general public; rather, he administers laws that govern the civil service and prohibited personnel practices. Finally, his remaining assertions that it has independently met some investigatory standard, his reliance on the Lim Declaration, and his appeals to resource constraints are unavailing.

This Court should read the statute as written and hold that 5 U.S.C. § 1216 imposes a ministerial duty on the Special Counsel to investigate allegations made pursuant to that section.

## Argument

## I. The Special Counsel is Not Entitled to Prosecutorial Discretion.

The government rests its argument on the theory that the Office of Special Counsel is a law enforcement officer akin to the Attorney General. Resp. Br. at 14–16. But in so doing, the Special Counsel misses the elephant in the room: his authorizing statute contains insulations from Presidential removal that are absent for all the Officers with whom he seeks to compare himself. *See* 5 U.S.C. § 1211; *cf.* 6 U.S.C. § 112(a); 28 U.S.C. §§ 503, 532.

### A. *Officers of the United States Exercising Executive Power Must be Removable by the President.*

The government assumes that the Office of Special Counsel is vested with core executive functions without explaining how to square Congress's removal protections of his office with the Supreme Court's decision in *Seila Law*. For the Special Counsel to properly rely on the cases he cites to claim prosecutorial discretion—such as *Citizens for Resp.*

& *Ethics in Wash. v. Fed. Election Comm'n*, 993 F.3d 880 (D.C. Cir. 2021) [hereinafter *CREW*]; *De Martinez v. Lamagno*, 515 U.S. 417 (1995); and *United States v. Texas*, 599 U.S. 670 (2023)—he must concede that the removal protections found at 5 U.S.C. § 1211 are an unconstitutional restraint on the President's removal authority over him.

The Constitution provides that the President "shall nominate … all other Officers of the United States … but the Congress may by law vest the Appointment of such Inferior Officers, as they think proper, in the President alone … or in the Heads of Departments." U.S. CONST. art. II, § 1, cl. 2. While the Constitution is silent on the President's removal authority, since 1789, the courts have held that Congress has endorsed the view that the Constitution gives the President "the power to remove executives." Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive Power of Removal,* 136 HARV. L. REV. 1756, 1776 (2023) (citing *Parsons v. United States*, 167 U.S. 324, 330–35 (1897) (collecting authorities)).

> The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II, was settled by the First Congress, and was confirmed in the landmark decision *Myers v. United States*. Our precedents have recognized only two exceptions to the President's unrestricted removal power. In *Humphrey's*

> *Executor v. United States*, we held that Congress could create
> expert agencies led by a group of principal officers removable
> by the President only for good cause. And in *United States v.
> Perkins* and *Morrison v. Olson* we held that Congress could
> provide tenure protections to certain inferior officers with
> narrowly defined duties.

*Seila Law,* 591 U.S. at 204 (internal citations omitted).

Because of the background presumption that the President may remove anyone he appoints, Congress must clearly restrict the President's removal power when it intends to negate that background presumption. *See Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023). "The Supreme Court has recognized only two ways Congress can send such a clear signal. First, Congress may impose a removal restriction in the plain text of a statute. Second, Congress may clearly indicate its intent to restrict removals through the statutory structure and function of an office." *Id.* (citing *Seila Law*, 591 U.S. at 229) (internal citation omitted). Here, Congress chose the first.

The Special Counsel's authorizing statute states, "The Special Counsel may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b). This language is identical to the language used for the Consumer Financial Protection Bureau in *Seila Law*. *See* 591 U.S. at 229. There, the Court found such

language to be severable from the rest of the statute and held that, "While we have previously upheld limits on the President's removal authority in certain contexts, we decline to do so when it comes to principal officers who, *acting alone,* wield significant executive power." *Id.* at 238 (emphasis added).

B. *The Special Counsel is Not a Prosecutor.*

The Special Counsel's cited authorities are distinguishable because he is not a prosecutor and lacks the discretion to interpret the command "shall" in 5 U.S.C. § 1216 as if it were the permissive "may."

First, the government cites to *CREW* to su pport its argument that "civil enforcement actions are presumptively committed to the agency's discretion." Resp. Br. at 15. But that is not the key holding of *CREW*. In *CREW*, this Court held, "We cannot review the Commission's decision because it rests on prosecutorial discretion." *CREW*, 993 F.3d at 882.

Ironically, the Federal Election Commission can exercise Executive Power—as an independent body not subject to the direct control of the President—precisely because it has a six-member structure and a narrowly defined duty: enforcement of the nation's federal campaign finance laws. *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935);

*accord Seila Law*, 591 U.S. at 204; *see also Bowsher v. Synar*, 478 U.S. 714, 725 n.4 (1986) (indicating that a multi-member commission creates a presumption of independence versus an agency with a single head). The Special Counsel, by contrast, claims the executive power and the discretionary enforcement of the law as if he were an independent actor. Resp. Br. at 16.

Second, the Special Counsel cites *United States v. Texas* to argue that enforcement discretion is "deeply rooted" in American Law. Resp. Br. at 16. But *Texas* is an Article III standing case. "The threshold question is whether the States have standing under Article III to maintain this suit. The answer is no." *Texas*, 599 U.S. at 676. There, Texas and Louisiana sued the Department of Homeland Security, alleging that the Secretary's policies violated laws Congress had enacted requiring him to arrest certain illegal aliens. *Id.* at 673–74. The states had established Article III standing in the trial court on the grounds that they were harmed financially and under a *parens patriae* theory. *See Texas v. United States*, 606 F. Supp. 3d 437 (S.D. Tex. 2022). But the Supreme Court disagreed, finding that Article III lacked the authority to grant the relief sought by the states: namely to order the Article II branch

to make more arrests. *Texas*, 599 U.S. at 686. Because arresting aliens is a core executive power that involves "enforcement discretion" the Court found it lacked jurisdiction to hear the case. *Id.* at 679–80.

This case is nothing like *Texas*. First, standing is not at issue. Second, the Special Counsel's theory would have this Court hold that there is no daylight between the Secretary of Homeland Security or the Director of Immigration and Custom Enforcement, and their role in arresting aliens unlawfully present in the country, and the Special Counsel's role in investigating alleged violations of the Freedom of Information Act ("FOIA").

Lastly, the government invokes a footnote from *De Martinez* to suggest that "shall"—as used in 5 U.S.C. § 1216—is a settled matter. Resp. Br. at 11, 18. But *De Martinez* is entirely inapplicable to the instant case. The question in *De Martinez* was whether the Attorney General's scope-of-employment determination, made for purposes of the Federal Tort Claims Act, was reviewable. 515 U.S. at 420. Latching onto a footnote discussing how the word "shall" can have different meanings, the Special Counsel suggests that *De Martinez* settles the dispute as to

the provision before the Court. It is a complete non-sequitur with no persuasive value.

While the Special Counsel cites cases evaluating the actions of the Federal Election Commission, the Secretary of Homeland Security, and the Attorney General (among others), he fails to establish that he is like those Officers in any meaningful way. At their core, the Attorney General and the Secretary of Homeland Security enforce broadly applicable laws as the chief deputies of the sovereign in the areas of border enforcement, alienage, and criminal law. But even in the circumstances where the government acts as a sovereign and is entitled to maximum discretion, its prosecutorial power is reviewable by the courts because of the intrinsic constitutional risks that attend prosecutorial investigations and enforcement. *See, e.g., United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)) ("the exercise of prosecutorial discretion is 'subject to constitutional constraints.'").

But the task of administration is different. In addition to administering the laws that govern the civil service, including the Civil Services Reform Act ("CSRA"), Whistleblower Protection Act ("WPA"),

and the Hatch Act, Congress tasked the Special Counsel with ensuring the arbitrary abuse of FOIA by the bureaucracy is enforced. This is the sort of administrative responsibility that would not fit within the discretionary scope of the Department of Justice, the Department of Homeland Security or any other executive branch entity tasked primarily with enforcing the law. As such, it does not implicate any core executive power to hold that § 1216 creates a ministerial duty.

* * *

The Special Counsel contends that, because he enforces laws such as the CSRA, WPA, and the Hatch Act, he is akin to the Secretary of Homeland Security or the Attorney General—Officers charged with executing the core functions of the government. Because he is like these officers, the Special Counsel argues, he should get prosecutorial discretion to read "shall" as "may."

But the Special Counsel fails to square that argument with the removal restrictions of 5 U.S.C. § 1211 or the Supreme Court's precedent established in *Seila Law*. Moreover, the Special Counsel does not account for the distinction between his role in administering employment laws

with the traditional law enforcement roles of Officers such as the Attorney General or Secretary of Homeland Security.

## II. The Word "Shall" is a Command and Not a Suggestion.

In *Anglers Conservation Network v. Pritzker*, this Court stated, "The traditional, commonly repeated rule is that shall is mandatory and may is permissive." 809 F.3d 664, 671 (D.C. Cir. 2016) (cleaned up). And while acknowledging that "shall" and "may" can take on different meanings in different contexts, the Court observed, "But when a statutory provision uses both 'shall' and 'may,' it is a fair inference that the writers intended the ordinary distinction." *Id.*

Here, the Court must determine if 5 U.S.C. § 1216(c) imposes a mandatory duty on the Special Counsel or confers a discretionary authority. For the reasons stated in the Opening Brief, the Appellant's position is that the statute imposes a non-discretionary duty on the Special Counsel to investigate alleged arbitrary and capricious withholding practices.

As further support, the mandatory nature of the duty imposed by § 1216 is consistent with FOIA's requirement that the Special Counsel investigate agency actions after a court "issues a written finding that the

circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously." 5 U.S.C. § 552(a)(4)(F)(i). Certainly, the Special Counsel does not take the position that the duty imposed by the FOIA statute is discretionary.

The Supreme Court has recognized time and again that Congress knows how to grant discretion. Most recently, in the case of *Bouarfa v. Mayorkas*, the Court considered the Secretary of Homeland Security's ability to revoke a previously granted visa petition. 604 U.S. ____ (Dec. 10, 2024), slip op. at 2. The Court found, "It is clear on the face of §1155 that the revocation provision is a quintessential grant of discretion to the Secretary." *Id.* at 6. The case illustrates that even the Secretary of Homeland Security, who, as discussed above, enjoys the maximum extent of prosecutorial discretion, can be given mandatory duties as well as discretionary authorities.

There is no reason, here, to divert from the default presumption that shall imposes a command, especially in light of the Supreme Court's reinforcement that Congress knows how to make discretionary grants of authority.

## III. The Special Counsel's Other Arguments Fail.

A. *The Special Counsel Disposes of Tens of Thousands of Requests Per Year; It Can Look at One More.*

The Special Counsel argues that it "is implausible that Congress intended for the Special Counsel to expend its limited resources investigating every allegation that a federal employee violated FOIA or the other enumerated civil services laws in § 1216(a)." Resp. Br. at 11. Yet that is exactly what the Special Counsel does.

In 2021, Appellant America First Legal ("AFL") filed a FOIA request with the Special Counsel seeking the disposition of all requests for investigation.[1] The Special Counsel responded producing a spreadsheet of all matters opened by the Special Counsel from 2011 to 2021. This spreadsheet contained information regarding the disposition of 103,424 distinct actions by the Special Counsel on cases opened

---

[1] Letter from Gene P. Hamilton, Gen. Couns., Am. First Legal, to Mahala Dar, Chief FOIA Officer, U.S. Off. of Special Couns. (June 29, 2021) (available at https://perma.cc/4SHM-WTLW) (tracking number OSC-2021-109). This Court can take Judicial Notice of documents produced in response to FOIA requests as a "matter[] of public record" pursuant to *Lee v. City of L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001); *accord* FED. R. EVID. 201(b)(2); *see also Whiting v. AARP*, 637 F.3d 355 (D.C. Cir. 2011) (relying on *Lee* to find that the court may take judicial notice of public material).

between 2011 and 2021. Not one of the dispositions for Hatch Act, WPA, or CSRA were closed with the caption "declined to investigate."[2] *Id.* Many were closed with captions indicating insufficient jurisdiction, insufficient facts, allegations being investigated by another authority, such as the Inspector General, complaints withdrawn or disproved, or other indicators that some action was taken.

In contrast to the 103,424 cases reviewed by the Special Counsel, only *nine investigations* were opened in 2018 and 2019 for allegations of FOIA violations. Thus, the notion that this is an undue administrative burden that requires the Special Counsel to make difficult decisions regarding the allocation of resources is unsubstantiated.

B. *The Special Counsel Did Not Conduct an Investigation by Issuing a Letter Denying Such an Investigation.*

The Special Counsel asserts that even if he has a ministerial duty to investigate, he has met that burden by issuing a letter declining to investigate. This argument rests on the Special Counsel's use of the word "further" in its own letter to bootstrap the argument that it has conducted an investigation. J.A. at __, [Doc. 22-1 at 2].

---

[2] *OSC Hatch Act*, AM. FIRST LEGAL, https://perma.cc/KF9A-PBCQ.

After the district court opinion corrected the original legal error of the Special Counsel, the Special Counsel was forced to confront the allegations made in the complaint. In a letter that was largely defiant of the district court's ruling, the Special Counsel stated that the district court held its § 1216 authority was a discretionary power, and that the Special Counsel was "exercising its discretion to respectfully decline" to investigate the claims of an arbitrary and capricious withholding practice at the Department of Justice's Civil Division. J.A. __ [Doc. 22-1 at 3].

The Special Counsel contends that this denial was, in fact, an investigation. In support, the government argues that it "identified 'several factors that it considered in making its determination'" including the Lim Declaration. But the Lim Declaration is a red herring. Lim does not even purport to have firsthand knowledge of any facts. He did not join the FOIA office until six months after the relevant communications occurred. J.A. ___ [Doc. 7-3 at 2]. His Declaration simply attempts to rewrite documents already on the record as if they do not mean what they say.

Next, the Special Counsel cited the existence of a separate FOIA suit, which the district court already opined was not relevant to its

interpretation of the Special Counsel's § 1216 authority and responsibilities. J.A. __ [Doc. 22-1 at 2]. Finally, the Special Counsel cited scarce resources. *Id.* At no point did it treat this request for investigation the way it treats the tens of thousands of other requests for investigation it receives every year under its § 1216 authority. That is because the Special Counsel cannot say that AFL provided insufficient evidence; AFL provided *prima facie* evidence of arbitrary and capricious withholding in violation of FOIA by including a written admission from a FOIA officer from the Civil Division of the Department of Justice that they had an "unwritten policy" allowing employees to opt out of FOIA. J.A. __ [Doc. 1-2 at 8]. At every point, since AFL filed its request on August 17, 2022, the Special Counsel has attempted to avoid its duty to investigate this documented and substantiated allegation.

## Conclusion

For the foregoing reasons, the Appellant respectfully requests that this Court reverse the district court's finding that the Special Counsel had discretion to investigate as legal error and hold that 5 U.S.C. § 1216 creates a ministerial duty on the Special Counsel to investigate the allegations at issue.

December 13, 2024          Respectfully submitted,


                          / s / Andrew J. Block
                          Reed D. Rubinstein (D.C. Bar No. 400153)
                          Andrew J. Block (D.C. Bar No. 90002845)
                          AMERICA FIRST LEGAL FOUNDATION
                          611 Pennsylvania Ave., SE #231
                          Washington, D.C. 20003
                          (202) 964-3721
                          reed.rubinstein@aflegal.org
                          andrew.block@aflegal.org
                          *Counsel for Plaintiff-Appellant*

## Certificate of Compliance

Pursuant to Fed. R. App. P. 32(g), the undersigned counsel certifies compliance with the requirements of Fed. R. App. P. 32(a)(5)-(7). The brief does not exceed 15 pages and is 2,985 words in length (including footnotes). The brief was prepared in 14-point Century Schoolbook font and follows the required formatting regulations.


  */s/ Andrew J. Block*
Andrew J. Block

**Certificate of Service**

I hereby certify that on December 13, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

_/s/ Andrew J. Block_
Andrew J. Block

**ADDENDUM**

**5 U.S.C. § 552(a)(4)(F)**

(i)    Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

(ii)    The Attorney General shall-
    (I) notify the Special Counsel of each civil action described under the first sentence of clause (i); and
    (II) annually submit a report to Congress on the number of such civil actions in the preceding year.

(iii)    The Special Counsel shall annually submit a report to Congress on the actions taken by the Special Counsel under clause (i).

## 5 U.S.C. § 1211

(a) There is established the Office of Special Counsel, which shall be headed by the Special Counsel. The Office shall have an official seal which shall be judicially noticed. The Office shall have its principal office in the District of Columbia and shall have field offices in other appropriate locations.

(b) The Special Counsel shall be appointed by the President, by and with the advice and consent of the Senate, for a term of 5 years. The Special Counsel may continue to serve beyond the expiration of the term until a successor is appointed and has qualified, except that the Special Counsel may not continue to serve for more than one year after the date on which the term of the Special Counsel would otherwise expire under this subsection. The Special Counsel shall be an attorney who, by demonstrated ability, background, training, or experience, is especially qualified to carry out the functions of the position. A Special Counsel appointed to fill a vacancy occurring before the end of a term of office of the Special Counsel's predecessor serves for the remainder of the term. The Special Counsel may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office. The Special Counsel may not hold another office or position in the Government of the United States, except as otherwise provided by law or at the direction of the President.

## §1216. Other matters within the jurisdiction of the Office of Special Counsel

(a) In addition to the authority otherwise provided in this chapter, the Special Counsel shall, except as provided in subsection (b), conduct an investigation of any allegation concerning-

　(1) political activity prohibited under subchapter III of chapter 73, relating to political activities by Federal employees;

　(2) political activity prohibited under chapter 15, relating to political activities by certain State and local officers and employees;

　(3) arbitrary or capricious withholding of information prohibited under section 552, except that the Special Counsel shall make no investigation of any withholding of foreign intelligence or counterintelligence information the disclosure of which is specifically prohibited by law or by Executive order;

　(4) activities prohibited by any civil service law, rule, or regulation, including any activity relating to political intrusion in personnel decisionmaking; and

　(5) involvement by any employee in any prohibited discrimination found by any court or appropriate administrative authority to have occurred in the course of any personnel action.

(b) The Special Counsel shall make no investigation of any allegation of any prohibited activity referred to in subsection (a)(5), if the Special Counsel determines that the allegation may be resolved more appropriately under an administrative appeals procedure.

(c) If the Special Counsel receives an allegation concerning any matter under paragraph (1), (3), (4), or (5) of subsection (a), the Special Counsel may investigate and seek corrective action under section 1214 and disciplinary action under section 1215 in the same way as if a prohibited personnel practice were involved.

**6 U.S.C. § 112**

(a) Secretary

    (1) In general

    There is a Secretary of Homeland Security, appointed by the President, by and with the advice and consent of the Senate.

    (2) Head of Department.

    The Secretary is the head of the Department and shall have direction, authority, and control over it.

    (3) Functions vested in Secretary

    All functions of all officers, employees, and organizational units of the Department are vested in the Secretary.


**28 U.S.C. § 503**

The President shall appoint, by and with the advice and consent of the Senate, an Attorney General of the United States. The Attorney General is the head of the Department of Justice.


**28 U.S.C. § 532**

The Attorney General may appoint a Director of the Federal Bureau of Investigation. The Director of the Federal Bureau of Investigation is the head of the Federal Bureau of Investigation.